Affirmed by published opinion. Judge KING wrote the opinion, in which Chief Judge TRAXLER joined. Judge WYNN wrote a dissenting opinion.
OPINION
KING, Circuit Judge:
In a case of mistaken identity, Michael Dwayne Durham was charged and jailed in southwest Virginia for more than three months before the prosecutor realized and rectified the error. As a result, Durham initiated this civil action in the Western District of Virginia against, inter alia, officer David L. Horner, alleging a Fourth Amendment claim under 42 U.S.C. § 1983, plus a state law claim for malicious prosecution.[1] The district court awarded summary judgment to Horner on the basis of qualified immunity, and Durham appeals. See Durham v. Horner, No. 2:09-cv-00012 (W.D.Va. Dec. 7, 2010) (the “Opinion”).[2] As explained below, we affirm.
I.
In 2005, Horner was a police officer in Big Stone Gap, Virginia, and a member of the Regional Drug Task Force.[3] In performing his Task Force duties, Horner arranged for three controlled drug buys in late 2005 through a confidential informant (the “Cl”).[4] On November 29, 2005, about an hour prior to the first drug buy, Horner received a telephone call from the Cl, who disclosed his plan to purchase illegal drugs from a man named “Michael Dwayne Durham.” See Opinion 2; J.A. 180. The Cl described the drug dealer as an “old man” who drove a Jeep with a stolen Tennessee license plate, number unknown. See J.A. 330-31, 334-35. Horner relayed the name Michael Dwayne Durham to the Task Force office which, in turn, provided a social security number and a Big Stone Gap post office "address associated with that name." Although the Task Force generally sought photographs of suspects, it did not secure a photo of the drug dealer.[5]
Horner used Accurint, an internet investigative tool available to law enforcement agencies, to query the name Michael Dwayne Durham, inputting the social security number obtained by the Task Force. The Accurint report listed Durham’s age as forty-five and his physical description, from Tennessee DMV records, as 6'7", 225 pounds, with brown hair and, hazel eyes. The report reflected the Big Stone Gap address where Durham received mail from 1982 to 1999. Accurint identified other *186 addresses for Durham, including Memphis, Tennessee, between 1982 and 1999, Smith-field, Virginia, in 1992. and between 1994 and 2002, and a “current” address: Horn Lake, Mississippi, where he had moved in September 1999. According to Accurint, Durham owned a Jaguar, and he had been arrested once for driving while intoxicated. The report cautioned that “[b]efore relying on any data this system supplies, it should be independently verified.” J.A. 228.
After obtaining the Accurint report, Horner checked VCIN, another internet resource for law enforcement agencies, where he acquired Durham’s criminal history record in Mississippi. That record, from the state Department of Public Safety, described Durham as 6'1" and 197 pounds, with state convictions for possession of drug paraphernalia in February 2003, and for public drunkenness and possession of drug paraphernalia in July 2003.
With respect to the Cl’s first drug buy, Horner completed a “CSI Tracking Sheet,” identifying the target as “Mike Durham” with the Big Stone Gap address. J.A. 222. He also completed a laboratory examination request for eight yellow pills (believed to be Percocet) purchased from “Durham, Michael Dwayne” on November 29, 2005. Id. at 223. Horner submitted the CSI Tracking Sheet and the laboratory request to the Task Force for processing.
The Cl’s two other drug buys occurred in Wise County on December 3 and 16, 2005. On both occasions, the Cl identified the drug dealer as Michael Dwayne Durham. The Cl purchased eight yellow pills in the second drug buy and two packs of white powder (believed to be methamphetamine) during the third. Officer Horner submitted a CSI Tracking Sheet and laboratory request to the Task Force for each of the latter two drug transactions. When the laboratory results confirmed that the Cl had, in fact, purchased drugs in each of the three incidents, Horner “told [the Task Force] to go ahead and indict [Durham].” J.A. 331. From that point on, Horner had no involvement in Durham’s arrest and prosecution.
On May 31, 2006, Task Force Agent Larry Mullins testified before the grand jury in Wise County. An excerpt of those grand jury proceedings shows the following exchange:
LARRY MULLINS: Next one will be on Michael Dwayne Durham, D-U-RH-A-M.
THE JUROR: I have two on him.
LARRY MULLINS: Should be an offense day of 12/16/05.
THE JUROR: I have three on him.
LARRY MULLINS: On 12/16/05 informant contacted agent David Horner and advised him he made arrangements to purchase Methamphetamine from Michael Durham. Informant met with Agent Horner where they were searched for no contraband found. Informant was provided with a transmitter recording device and money to make the purchase.
Informant met with suspect Michael Durham and purchased one gram of Methamphetamine for $100. Informant met back with Agent Horner turning the narcotic over to him where they were searched again with no contraband found.
THE JUROR: Now when you say one unit is that—
J.A. 284. On May 31, 2006, the grand jury returned three indictments against Michael Dwayne Durham — relating to the three drug transactions with the Cl— charging him with felony drug distribution offenses. See id. 207, 216, 219. As a result, the circuit court issued three separate bench warrants directing “Sgt. D. Horner, or Any Other Authorized Law *187 Enforcement Officer” to arrest “Michael Dwayne Durham.” See id. at 208, 217, 220.
Nearly six months later, in November 2006, Durham, who was living in Memphis, Tennessee, received a letter from the Social Security Administration notifying him that his disability benefits would be terminated due to an outstanding arrest warrant in Wise County, Virginia. .As a result, David Byard, one of Durham’s friends, contacted the Wise County Sheriffs Department to inquire about the warrant and explain that Durham had not lived in Virginia for more than ten years. Byard was told that Durham should surrender to the authorities in Memphis, and “they would straighten it out.” See J.A. 242. In December 2006, Durham surrendered to the Memphis authorities, waived extradition, and was transported to the Southwest Virginia Regional Jail at Duffield, Virginia.
On December 15, 2006, Durham appeared before a Virginia magistrate and informed the court, inter alia, that “they’ve got the wrong person” because he had never sold drugs. See J.A. 248. The magistrate responded, “[W]ell, we’ve got your address where you lived in Big Stone Gap, Virginia.” Id. Durham replied, “[Y]es, sir, that’s right [but] what does that prove[?]” Id. Although the court fixed Durham’s bail at “$9,000 secured,” he was unable to post bond. See id. at 212. On December 18, 2006, Durham appeared before the Wise County circuit judge and the court appointed counsel. Durham’s lawyer, however, waited for two months, until February 2007, to contact his client. Meanwhile, Durham did not raise any mistaken identity issues with the Regional Jail authorities because, according to Durham, “they wouldn’t have believed [him].” See id. at 247. When Durham’s lawyer finally talked to his client, Durham apparently explained the situation. Durham remained in the Regional Jail for another month, however, until March 20, 2007, when his lawyer presented Durham’s cell phone records to the Commonwealth’s Attorney and argued that the wrong person had been indicted and arrested. The prosecutor agreed with the defense lawyer and dismissed the three indictments against Durham later that same day.
Nearly two years later, on March 17, 2009, Durham initiated this federal court civil action against the Commonwealth’s Attorney, the Sheriff, and Horner. The only alleged claims to survive the initial round of dispositive motions in the district court were Durham’s § 1983 claim and a state law malicious prosecution claim against Horner, each predicated on an asserted violation of his Fourth Amendment right to be free from unreasonable seizure. Horner moved for summary judgment on the basis of qualified immunity, and, on December 7, 2010, the district court granted judgment in his favor. In rejecting Durham’s attempts to show factual disputes concerning Horner’s investigation and the resulting prosecution, the court explained that, at bottom,
[qualified immunity does not protect only those police officers who are never mistaken. To have probable cause does not mean to have proof sufficient to convict. ' It is clear from the present record that' ... Horner acted in good faith in accord with the information available to him.' That'his investigation led to the very unfortunate circumstance portrayed in this case is highly regrettable, but under the law, these facts do not permit the officer to be subject to a trial for money damages.
Opinion 8-9. Durham has timely appealed from the district court’s qualified immunity ruling, and we possess jurisdiction pursuant to 28 U.S.C. § 1291. ■
*188 II.
We review de novo an award of summary judgment on the basis of qualified immunity. See Lefemine v. Wideman, 672 F.3d 292, 297 (4th Cir.2012). Summary judgment is proper “only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party,” there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir.2011).
III.
Durham contends on appeal that Horner was not entitled to qualified immunity because he relied on and utilized unverified information to set “forth a chain of events that would lead to the indictment and arrest of the wrong individual.” Br. of Appellant 10. Durham emphasizes that Horner knew from the Accurint report that Durham had not had a Big Stone Gap address since 1999; that Horner never obtained the Tennessee license number to confirm whether the Jeep belonged to Durham; that Horner had not secured a photograph of Durham to show the Cl and confirm the drug dealer’s identity; that Horner believed the dealer was approximately sixty years old, and not, like Durham, in his mid-forties; and that Horner admitted by deposition that he was not a hundred percent certain that he had the correct Michael Durham. Accordingly, Durham maintains that “Horner’s actions were plainly incompetent,” arguing that “whether or not Horner acted reasonably is a jury question.” Id. at 11.
As we have recognized, “[qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.” Henry v. Purnell, 652 F.3d 524, 531 (4th Cir.2011). Hence, our qualified immunity defense involves a “two-step” inquiry, asking “first whether a constitutional violation occurred and second whether the right violated was clearly established.” Id. (internal quotation marks omitted).
Put succinctly, Durham’s “malicious prosecution” claim fails the first step of the qualified immunity inquiry.[6] Although “it is not entirely clear whether [there is] a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure.” Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009) (citations omitted). Thus, what has been inartfully “termed a ‘malicious prosecution’ claim ... is simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution.” Id. (internal quotation marks omitted). More specifically, “we have required that [1] the defendant have ‘seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiffs favor.’ ” Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir.2005) (quoting Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir.1996)) (alterations and emphasis omitted).
 Durham is unable to establish a constitutional violation because, although *189 the underlying criminal proceedings were terminated in his favor, the prosecution was plainly supported by probable cause, as conclusively established by the three indictments. It has long since been settled by the Supreme Court that “an indictment, ‘fair upon its face,’ returned by a ‘properly constituted grand jury,’ conclusively determines the existence of probable cause.” Gerstein v. Pugh, 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (internal quotation marks omitted); Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (recognizing that grand jury “indictment ... valid on its face, is enough to call for trial of the charge on the merits”). Notwithstanding the conclusive effect of the indictments, our precedents instruct that “a grand jury’s decision to indict ... will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.” See, e.g., Goodwin v. Metis, 885 F.2d 157, 162 (4th Cir.1989) (quoting favorably Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir.1988)), overruled in part by, Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); see also Miller v. Prince George’s Cniby., Md., 475 F.3d 621, 632 (4th Cir. 2007) (observing that “the Constitution did not permit a police officer ... with reckless disregard for the truth, to make material misrepresentations or omissions to seek [an arrest] warrant that would otherwise be without probable cause”).
The primary problem that Durham faces in this proceeding is that he was indicted by a Wise County grand jury before which Horner did not even testify. Agent Mullins was the only law enforcement officer to testify before the grand jury and, in that circumstance, Horner could hardly have been the instrument of its misapprehension. Indeed, we have no basis for concluding that Horner tainted the grand jury process, because, other than the excerpt from Agent Mullins’s testimony (referenced above), the record does not disclose the evidence that the grand jury heard and considered. Nor has Durham put forward any evidence to show that Horner acted maliciously or conspired with Agent Mullins to mislead the grand jury.[7] As a result, the grand jury’s probable cause determinations and its three indictments were the proximate cause of Durham’s arrest and detention, which by operation of law constituted a reasonable seizure. Cf. Brooks, 85 F.3d at 184 & n. 7 (recognizing that, where untainted facts support officer’s assessment of probable cause, seizure “rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate ... is reasonable” and “break[s] the causal chain between the application for the warrant and the improvident arrest”); see also Jennings v. Patton, 644 F.3d 297, 301 (5th Cir.2011) (upholding award of qualified immunity to public official, despite assertion that he tainted grand jury process, because, inter alia, official did not testify before grand jury); Anthony v. Baker, 767 F.2d 657, 666 (10th Cir.1985) (affirming verdict in favor of officer who assisted in investigation but did not testify *190 before grand jury as there was no evidence that he “conspired ... to taint the probable cause determinations”).
Even if we were disposed to look behind the indictments in this case, we would agree with the district court that Horner was not plainly incompetent in assessing the probable cause issue. As we have recognized, “[fjor probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required.” Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002) (analyzing § 1983 false arrest claim under Fourth Amendment’s unreasonable seizure framework). Put simply, there was ample evidence for a reasonable law enforcement officer to believe that Durham was involved in the three drug transactions— namely, the Cl had on three occasions identified the drug dealer as Michael Dwayne Durham; Durham had a Big Stone Gap address; the drug dealer had a vehicle with Tennessee license plates; Durham had a Tennessee driver’s license; and Durham’s criminal history included two drug-related convictions. Contrary to Durham’s assertions, Horner was “not required to exhaust every potentially exculpatory lead or resolve every doubt about [Durham’s] guilt before probable cause [was] established.” See Miller, 475 F.3d at 630 (internal quotation marks omitted). Nevertheless, even if the existence of probable cause were a close question, the “qualified immunity standard gives ample room for mistaken judgments.” Henry, 652 F.3d at 534 (internal quotation marks omitted). Indeed, qualified immunity protects public officials from “bad guesses in gray areas.” Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992).
In sum, Durham is unable to establish that his seizure was “pursuant to legal process that was not supported by probable cause,” Burrell, 395 F.3d at 514, and he has not shown the essential constitutional violation underlying a § 1983 claim.[8] Because there was, as a matter of law, probable cause for Durham’s arrest and detention, his state law malicious prosecution claim fails as well. See Lewis v. Kei, 281 Va. 715, 708 S.E.2d 884, 889-90 (2011) (affirming dismissal of state law malicious prosecution claim where plaintiff failed to allege essential element of lack of probable cause).
IV.
Pursuant to the foregoing, we affirm the judgment of the district court.

AFFIRMED

. Durham also named as defendants the Commonwealth’s Attorney of Wise County and its high Sheriff. He has not appealed the district court’s judgment of dismissal in favor of those defendants.

. The district court's unpublished Opinion is found at J.A. 357-66. (Citations herein to "J.A._” refer to the contents of the Joint Appendix filed by the parties in this appeal.)

. For purposes of our review of the district court's summary judgment award, we recite the facts in the light most favorable to Durham, as the nonmoving party. See Buckley v. Mukasey, 538 F.3d 306, 310 n. 4 (4th Cir. 2008).

. By its Opinion, the district court observed that "[tjhere were apparently more than one Cl involved in some fashion, although the Cl Tracking Sheets prepared by Horner at the . time indicated one and the same Cl for each drug purchase.” Opinion 2 n.l.

. After Horner became aware of this civil action, he conducted a review of the case to determine what had happened. He eventually showed the Cl a photograph of a “Michael David Durham,” whom the Cl identified as the person who sold him drugs. See J.A. 274-75 (emphasis added).

. Consistent with the Supreme Court’s decision in Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we are entitled to evaluate the two qualified immunity inquiries in either order. Because we can dispose of this case on the first step, we turn immediately to it.

. We recognize that malice is not an essential element of a Fourth Amendment claim for unreasonable seizure because “the reasonableness of a seizure ... should be analyzed objectively.” Burrell, 395 F.3d at 514 n. 5. Of course, the determination of probable cause inherent in any indictment — typically rendering perforce any seizure of the named defendant objectively reasonable — can be legitimately questioned in the presence of facts indicating that a law enforcement officer has maliciously tainted the grand jury process. Other than a bald allegation of a lack of probable cause, however, there is no allegation or evidence that any of Horner’s actions contributing to Durham’s indictments and arrest were motivated by either malice or ill will.

. Having concluded that Durham has no "viable § 1983 claim, we need not determine whether any rights [he] asserted were 'clearly established' for purposes of qualified immunity.” See Lambert v. Williams, 223 F.3d 257, 263 n. 5 (4th Cir.2000).