**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 13-2257**

─────────

ANDREW FIALDINI; MARYANN FIALDINI,

Plaintiffs - Appellants,

v.

ERIC COTE, Individually and Officially; JAIME SANFORD, Individually and Officially; GARY GAITHER, Individually and Officially; STEPHEN O. SIMPSON, Individually; JANE DOE ONE, Individually and Officially; JOSIAH KENNEDY, Individually and Officially,

Defendants - Appellees.

─────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:12-cv-01056-LMB-TRJ)

─────────

Argued: October 28, 2014          Decided: December 5, 2014

─────────

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and DAVIS, Senior Circuit Judge.

─────────

Affirmed by unpublished opinion. Senior Judge Davis wrote the opinion, in which Chief Judge Traxler and Judge Diaz joined.

─────────

**ARGUED:** Thomas Kenneth Plofchan, Jr., WESTLAKE LEGAL GROUP, Potomac Falls, Virginia, for Appellants. Alexander Francuzenko, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellees. **ON BRIEF:** Broderick C. Dunn, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia, for Appellees.

─────────

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

This damages action under 42 U.S.C. § 1983 against several local law enforcement officers arises from Appellants' failed effort to prevent the arrest of their teenaged son. The district court granted summary judgment in favor of defendants on all counts. For the reasons that follow, we affirm.

I.

A.

The material facts relevant to this appeal are mostly undisputed. On October 19, 2009, Deputy Sheriff Eric Cote of the Loudoun County Sheriff's Office arrived at the residence of Andrew and Maryann Fialdini ("Appellants"), to execute an arrest warrant for Nicholas Fialdini, Appellants' then eighteen-year-old son. Deputy Cote learned of Nicholas's address through a DMV records search. Upon arriving at the Fialdini residence, Deputy Cote spoke directly to Mr. Fialdini and informed him that he had a warrant for Nicholas's arrest.[1] Mr. Fialdini told Deputy Cote that Nicholas was a student at the University of Alabama, and that Nicholas would not return to the residence

---

[1] The arrest warrant for Nicholas Fialdini contained a typographical error. It inverted the second digit of Appellants' address. The district court determined that the inversion of the two numbers did not invalidate the warrant, and the Appellants do not dispute that ruling on appeal. Supp. J.A. 134-139.

until Thanksgiving. Deputy Cote requested that Mr. Fialdini bring Nicholas to the Sheriff's Office when Nicholas returned so that the warrant could be executed, and Mr. Fialdini agreed to do so. In November, Nicholas visited his parents' residence for three days during Thanksgiving break, but on advice of counsel, he did not contact the Loudoun County Sheriff's Office.

On December 23, 2009, around 9:00 p.m., Deputy Cote made a second attempt to execute the arrest warrant for Nicholas at the Fialdini residence. Mr. Fialdini answered the door and stepped outside, closing the screen door behind him. Deputy Cote announced to Mr. Fialdini that he had a warrant for Nicholas's arrest. Mr. Fialdini asked Deputy Cote to produce a search warrant, and when Deputy Cote did not produce the warrant, Mr. Fialdini stated that he wanted to speak with his attorney. When Deputy Cote asked whether Nicholas was home, Mr. Fialdini purported to invoke his Fifth Amendment privilege to remain silent. Mr. Fialdini attempted to reenter his residence and close the door behind him, but Deputy Cote's hand and foot were on the door, preventing Mr. Fialdini from closing it fully. Mr. Fialdini contends that he tripped over a rug in the foyer, and thereby made contact with Deputy Cote's shoulder. Deputy Cote placed Mr. Fialdini under arrest for assault, and escorted him to the Sheriff's cruiser where Mr. Fialdini remained until he

4

was transported to jail later that evening. At some point during this encounter, Deputy Cote called for backup assistance.

Shortly after Mr. Fialdini's arrest, Lieutenant Gaither and Deputy Sanford arrived at the Fialdini residence. Mrs. Fialdini, who was grocery shopping at the time of the above events, arrived at the residence and met the officers inside. Deputy Cote informed Mrs. Fialdini that Mr. Fialdini had been placed under arrest, and that he had an arrest warrant for Nicholas. Mrs. Fialdini did not believe that Nicholas was home at the time and declined to consent to a search of the premises. Lieutenant Gaither called the on-call state attorney to determine whether, in the absence of consent, the officers had authority to search the residence for Nicholas. The attorney advised the officers that they could search, but only spaces large enough for a person to hide.

Lieutenant Gaither stayed in the hallway while Deputies Cote and Sanford began searching the residence for Nicholas. Deputies Cote and Sanford proceeded downstairs to the basement and Mrs. Fialdini followed. The deputies instructed Mrs. Fialdini to keep her distance. Upon hearing the officers issue verbal commands to someone in the basement, Mrs. Fialdini began to approach Deputy Sanford. Deputy Sanford ordered Mrs. Fialdini to go to the floor. She complied and Deputy Sanford

placed her in handcuffs.  The deputies ultimately found Nicholas hiding behind dry wall in a basement closet.

Appellants were taken to the Loudoun County Adult Detention Facility where they were placed in separate holding cells. While in lockup, Mrs. Fialdini informed Deputy Cote that she needed to use the restroom.  An unidentified female officer escorted Mrs. Fialdini to the restroom area.  Mrs. Fialdini alleges that, on the order of one or more of the defendants, the female officer ordered her to remove her clothing and then performed a strip search with a manual cavity check.

Mr. Fialdini was later charged with felony assault and battery of a law enforcement officer and obstruction of justice. The commonwealth did not prosecute the obstruction of justice charge.  A preliminary hearing was held on the assault charge, and a Virginia grand jury later issued an indictment.  On October 6, 2010, the prosecutor dismissed the assault charge with prejudice in exchange for Mr. Fialdini's performance of community service.  Mrs. Fialdini was charged with violating a Loudoun County ordinance prohibiting hindering, a misdemeanor. The prosecutor dismissed that charge with prejudice on February 25, 2010.

### B.

Mr. and Mrs. Fialdini filed separate lawsuits in the United States District Court for the Eastern District of Virginia.  The

6

district court consolidated the cases. Appellants alleged that the defendants violated their constitutional rights when they entered and searched Appellants' home, arrested Appellants without probable cause, and maliciously prosecuted claims against them. Mrs. Fialdini also alleged that she was subjected to an unconstitutional strip search while detained at the Loudoun County Adult Detention Facility. Appellants also asserted Virginia tort law claims, violations of the Virginia Constitution, and violations of Virginia common law.[2]

In an oral ruling from the bench, the district court granted defendants' motion for summary judgment. The district court made four principal determinations: (1) the officers' entry into Appellants' home was lawful; (2) Appellants' arrests were supported by probable cause; (3) the malicious prosecution claims failed as a matter of law; and (4) Mrs. Fialdini failed to adduce sufficient evidence to survive summary judgment on the illegal strip search claim. The district court found no material facts relevant to these issues in dispute, and concluded that all of the officers were entitled to qualified immunity, leaving no basis for imposing liability on defendant Sheriff Simpson. Appellants now appeal.

---

[2] Appellants have briefed only the claims asserted under § 1983. We therefore do not address the merits of Appellants' various state law claims.

7

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review an award of summary judgment on the basis of qualified immunity de novo. Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012). Summary judgment is proper if taking the evidence and drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, "'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)).

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "[I]f a plaintiff fails to allege that an official has violated any right, the official 'is hardly in need of any immunity and the analysis ends right then and there.'" Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) (quoting Abney v. Coe, 493 F.3d 412, 415 (4th Cir. 2007)). While we are not required to

analyze a qualified immunity claim by first determining whether the plaintiffs have demonstrated a violation of a constitutional right, see Pearson v. Callahan, 555 U.S. 223, 236 (2009), we nevertheless begin our discussion with whether defendants Cote, Sanford, and Gaither violated Appellants' Fourth Amendment rights when they entered their residence armed only with an arrest warrant for Appellants' son.

                                III.

An arrest warrant supported by probable cause provides officers with "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). Absent consent or exigent circumstances, police may not, however, enter the home of a third-person to execute an arrest warrant for a suspect named therein without first obtaining a search warrant. Steagald v. United States, 451 U.S. 204, 205-06 (1981). In order to determine whether police entry into a home to execute an arrest warrant is lawful, courts consider "(1) whether there is reason to believe that the location is the defendant's residence, and (2) whether or not there was a 'reasonable belief' that he would be home." United States v. Hill, 649 F.3d 258, 262 (4th Cir. 2011).

The Supreme Court did not define the "reason to believe" standard articulated in Payton. In the absence of this

guidance, our sister circuits have formulated their own definitions.[3] In keeping with our <u>Hill</u> decision, we need not enter into the midst of this debate because, even if we assume that the "reason to believe" standard requires a showing equivalent to probable cause, that standard is met here.

To properly assess whether probable cause existed, we look to the "totality of the circumstances" known to Deputy Cote at the time of the entry. <u>Illinois v. Gates</u>, 462 U.S. 213, 230 (1983). Probable cause "is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." <u>Id.</u> at 232. "Under this pragmatic, common sense approach, we defer to the expertise and experience of law enforcement officers at the scene." <u>United States v. Dickey-Bey</u>, 393 F.3d 449, 453 (4th Cir. 2004).

---

[3] Many circuits have concluded that the "reason to believe" standard requires a showing less exacting than probable cause. <u>See, e.g.</u>, <u>United States v. Werra</u>, 638 F.3d 326, 337 (1st Cir. 2011); <u>United States v. Barrera</u>, 464 F.3d 496, 501 n.5 (5th Cir. 2006); <u>United States v. Thomas</u>, 429 F.3d 282, 286 (D.C. Cir. 2005); <u>Valdez v. McPheters</u>, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999); <u>United States v. Lauter</u>, 57 F.3d 212, 215 (2d Cir. 1995). The Ninth Circuit equates reasonable belief to probable cause, <u>see</u> <u>United States v. Gorman</u>, 314 F.3d 1105, 1114 (9th Cir. 2002), and other circuits have declined to precisely define the "reason to believe" standard. <u>See, e.g.</u>, <u>United States v. Powell</u>, 379 F.3d 520, 523 (8th Cir. 2004); <u>United States v. Magluta</u>, 44 F.3d 1530, 1535 (11th Cir. 1995).

Under this standard, we conclude that Deputy Cote had reason to believe that Nicholas Fialdini both resided at the Fialdini home and was on the premises at the time he attempted to execute the arrest warrant. The undisputed facts bearing on residence, and known to Deputy Cote at the time of entry, are as follows: (1) an October 2009 DMV records inquiry showed Nicholas's address as the Fialdini residence; (2) Nicholas attended college in Alabama, but was expected to return to the Fialdini residence during Thanksgiving break; and (3) the Fialdinis are Nicholas's parents.

Appellants dispute a key fact, namely, whether Deputy Cote conducted a second license inquiry before his December attempt to execute the arrest warrant. Cote says he did so, and the results showed Nicholas's address as the Fialdini residence. Appellants theorized at oral argument that once Nicholas acquired his Alabama driver's license in the fall, any future DMV records search in Virginia would have reflected his Alabama address. Because Nicholas received a permanent Alabama driver's license on October 20, 2009, Appellants contend that the second DMV records search should have revealed a competing Alabama address. Appellants have set forth no evidence in support of this theory, however, and it stands in direct contrast to Deputy Cote's sworn statements that he did, in fact, conduct a second license inquiry. Because "[m]ere speculation by the non-moving

11

party cannot create a genuine issue of material fact[,]" we decline to find this factual dispute genuine. Cox v. Cnty. of Prince William, 249 F.3d 295, 299 (4th Cir. 2001).

Probable cause for a search, to which we equate the reason to believe standard for purposes of this one case today, requires only a "fair probability" that evidence (or, as here, a person) will be discovered, not certainty. Gates, 462 U.S. at 238. Deputy Cote was not required to know Nicholas's actual residence. "[R]equiring actual knowledge of the suspect's true residence would effectively make Payton a dead letter . . . since [officers] could never be certain that the suspect had not moved out the previous day and that a Bivens or a 42 U.S.C. § 1983 claim would then be made against them by another resident." Valdez v. McPheters, 172 F.3d 1220, 1225 (10th Cir. 1999). Furthermore, determining a suspect's actual residence, where as here, the suspect is a college student, would be especially difficult given that many college students maintain a residence on or near campus, in addition to a residence at their parents' home. Cf. United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000) (reasoning, in the context of the Payton "reason to believe" standard, that it is not unusual for 27-year-old adults to use their parents' address for records such as driver's licenses "because in a sense it may be a more permanent or fixed address than the address of their own residence"). Viewing the

12

totality of the circumstances, we hold that Deputy Cote had reason to believe that Nicholas was a resident of his parents' home, in spite of the fact that Nicholas attended college out of state.

Appellants assert that our decision in Wallace v. King, 626 F.2d 1157 (4th Cir. 1980), establishes that a parent's home cannot automatically be considered the shared residence of a child who is the subject of an arrest warrant. We never addressed that issue in Wallace. Wallace involved the subject of an arrest warrant who was known to stay with her parents occasionally when problems arose with her husband. Wallace, 626 F.2d at 1159. Officers searched the suspect's parents' home, and the home of another married couple after the suspect's husband informed officers that he observed his wife enter both residences. We concluded that the officers violated the Fourth Amendment when they searched the two residences without the homeowners' consent, exigent circumstances, or a search warrant. Significantly, we did not discuss whether officers had "reason to believe" that the subject of the arrest warrant lived at either residence. We held – in advance of the Supreme Court's Steagald decision - that the arrest warrant was not sufficient for officers to enter the third-party premises, because "[a]n arrest warrant indicates only that there is probable cause to believe the suspect committed a crime; it affords no basis to

13

believe that the suspect is in a stranger's house." Id. at 1161. Given our silence in Wallace on the issue at hand, whether the officers had "reason to believe" that the suspect resided in the homes searched, we decline to attach the significance to the case that Appellants urge.

Turning to prong two of the Payton analysis, we also conclude that Deputy Cote had reason to believe that Nicholas Fialdini was on the premises at the time Deputy Cote attempted to execute the arrest warrant. We have "sanctioned entry only where multiple facts support a reason to believe that the subject of the arrest warrant is present at the time of entry." Hill, 649 F.3d at 264.

Multiple facts support Cote's nonconsensual entry here. First, Deputy Cote arrived at the Fialdini residence around 9:00 p.m., an hour late enough to reasonably conclude that a person would be home. Courts can look to the time of day as a factor in determining whether officers possess a reasonable belief that the subject of an arrest warrant is at home. See, e.g., United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995) ("[O]fficers may presume that a person is at home at certain times of the day . . . ."); Bervaldi, 226 F.3d at 1267 (noting that it was reasonable for officers to conclude that suspect would be home at 6:00 in the morning); United States v. Thomas, 429 F.3d 282, 286 (D.C. Cir. 2005) (noting that "the early

14

morning hour" was reason enough for the officers to believe that the suspect would be home). Second, and importantly to our analysis, Deputy Cote observed Mr. Fialdini behave evasively. While Mr. Fialdini disputes any suspicious behavior on his part, he does not deny that when asked of his son's whereabouts, he stated that he wanted to speak with his lawyer and he purported to invoke his Fifth Amendment privilege against self-incrimination. Third, Deputy Cote visited the Fialdini residence two days before Christmas, a period when college students are presumably on academic break. Moreover, Mr. Fialdini previously told Deputy Cote that Nicholas had planned to visit the residence during Thanksgiving break, leading to the reasonable conclusion that Nicholas would return during the Christmas holiday school break, as well.

"[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists." Ornelas v. United States, 517 U.S. 690, 699 (1996). Deputy Cote inferred from the facts described that Nicholas was present in the residence at the time he attempted to execute the arrest warrant, and we find those inferences reasonable. Accordingly, we reject Appellants' claim of unlawful entry as to Deputy Cote, rendering the subsequent entry by Lieutenant Gaither and Deputy Sanford to provide assistance to Cote proper.

Finding no Fourth Amendment violation, we need not proceed to an analysis of whether the alleged violation was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity."). We agree with the district court that defendants Cote, Sanford, and Gaither are entitled to qualified immunity on Appellants' unlawful entry claims.

IV.

We next turn to Appellants' argument that the district court improperly granted summary judgment in favor of defendants on their claims of false arrest and malicious prosecution. Appellants contend that their arrests were made without probable cause, rendering the ensuing prosecution against them unlawful. Given that the malicious prosecution claims are "wholly derivative of the false arrest claim[s] for qualified immunity purposes[,]" we do not analyze them separately. Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001).

A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. To establish an unreasonable seizure under the Fourth Amendment, a claimant must demonstrate that he

16

was arrested without probable cause. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). "Probable cause to justify an arrest arises when facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). "For probable cause to exist, . . . evidence sufficient to convict is not required." Brown, 278 F.3d at 367.

A malicious prosecution claim grounded in § 1983, "is simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution." Durham, 690 F.3d at 188 (quoting Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009)). In order to prevail on a claim of malicious prosecution, the plaintiff must demonstrate that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans, 703 F.3d at 647.

We conclude as a matter of law that the officers acted with the "objective reasonableness necessary to entitle [them] to qualified immunity." Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991). We base our conclusion on the findings of probable cause for Appellants' arrests by judicial officers in

17

separate proceedings, and the fact that reasonable officers in defendants' positions would have believed that probable cause for Appellants' arrests existed.  See id.

B.

We turn first to Mr. Fialdini's claims of false arrest and malicious prosecution against Deputy Cote.

1.

Mr. Fialdini was charged under Virginia law with felony assault and battery of a law enforcement officer.  The district court pointed to three tiers of probable cause as justifying Mr. Fialdini's arrest.  First, the magistrate judge determined that probable cause existed, causing the arrest warrant to issue.  Second, a Loudon County district judge presiding over Mr. Fialdini's preliminary hearing determined that probable cause existed and certified the case to Virginia Circuit Court, noting that Mr. Fialdini's description of the events leading up to his arrest "did not seem particularly credible."  J.A. 200.  Third, a Virginia grand jury returned an indictment against Mr. Fialdini.  Appellants contend, however, that none of the probable cause findings is dispositive of Mr. Fialdini's claims of false arrest and malicious prosecution.

Appellants' argument fails for several reasons.  First, the fact that three judicial officers – the federal district judge, the Loudoun County district judge, and the magistrate judge all

found that probable cause existed is "plainly relevant to a showing that [Deputy Cote] met the lower standard of objective reasonableness required for qualified immunity." Torchinsky, 942 F.2d at 261. Second, we have held that, "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." Durham, 690 F.3d at 189 (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)). Appellants argue that the indictment cannot support a finding of probable cause because Mr. Fialdini was not permitted to present evidence before the grand jury, cf. Va. Code Ann. § 19.2-191 (describing the functions of a grand jury); Fed. R. Crim. P. 6(d), suggesting thereby that had he been allowed to do so, he would have defeated the prosecutor's showing that there was probable cause for his arrest. We reject this contention.

Appellants argue that Deputy Cote omitted material information from the arrest warrant affidavit completed after his warrantless arrest, namely that Deputy Cote prevented Mr. Fialdini from closing the door of his residence, and that Deputy Cote had no reason to believe that Nicholas resided in the home or was on the premises when he attempted to execute the warrant. We do not find that Deputy Cote omitted these facts "with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller v. Prince

19

George's Cnty., Md., 475 F.3d 621, 627 (4th Cir. 2007). As we have explained, Deputy Cote had reason to believe that Nicholas Fialdini both resided at his parents' home and was present in the residence at the time he attempted to execute the warrant. Therefore, Deputy Cote had the "limited authority" to enter Appellants' dwelling, Payton, 445 U.S. at 603, and the omission of the fact that Deputy Cote prevented Mr. Fialdini from closing the door to his residence would not have negated the magistrate's finding of probable cause for Mr. Fialdini's arrest.

2.

Finally, a reasonable officer "could have believed that arresting [Mr. Fialdini] . . . was lawful, in light of clearly established law and the information the officers possessed." Rogers, 249 F.3d at 290.

In Virginia, "assault occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Clark v. Commonwealth, 691 S.E.2d 786, 789 (Va. 2010). "To sustain a conviction for battery, the Commonwealth must prove a willful or unlawful touching of another." Parish v. Commonwealth, 693 S.E.2d 315, 318 (Va. Ct. App. 2010).

20

Despite the differing accounts of how Mr. Fialdini came into contact with Deputy Cote, it is undisputed that Mr. Fialdini's palms hit Deputy Cote's left shoulder area, giving Deputy Cote "sort of a jolt." J.A. 163. From this fact alone, we conclude that a reasonable officer could believe, "in light of the contours of the offense at issue," that probable cause existed for Mr. Fialdini's arrest. Rogers, 249 F.3d at 290. Accordingly, we hold that Mr. Fialdini failed to produce substantial evidence that Deputy Cote lacked probable cause for his arrest. Consequently, as we hold that the arrest of Mr. Fialdini was constitutionally valid, it follows that his claim of malicious prosecution must fail. Durham, 690 F.3d at 190 (holding that state law malicious prosecution claim failed because probable cause existed for plaintiff's arrest and detention) (citing Lewis v. Kei, 708 S.E.2d 884, 889-90 (Va. 2011)).

## C.

As to Mrs. Fialdini's claims of false arrest and malicious prosecution against defendants Cote and Sanford, we similarly affirm the district court. Mrs. Fialdini was charged with violating a Loudoun County ordinance, which prohibits an individual from "resist[ing] hinder[ing] or obstruct[ing] any Deputy Sheriff in making an arrest, in serving a warrant, order, notice or process or in the performance or discharge of any of

21

his or her duties." J.A. 269.2. Mrs. Fialdini argues that several facts relevant to a finding of probable cause are in dispute, and that there is insufficient evidence that she was attempting to resist, hinder, or obstruct Deputies Sanford and Cote.

We first note that both the magistrate judge who issued the warrant and the district court agreed that the evidence was sufficient to establish probable cause for Mrs. Fialdini's arrest. Second, a reasonable officer would have concluded that probable cause existed for Mrs. Fialdini's arrest. Mrs. Fialdini testified during her deposition that she followed Deputies Cote and Sanford downstairs as they were searching the basement, because it was possible that her son would be in that part of the house. She also admitted that the deputies instructed her to "back up" because she was "too close." J.A. 218. Appellants concede that Mrs. Fialdini was moving toward the basement bedroom door where Deputy Sanford was standing when she was ordered to go to the floor.

Appellants devote much argument to the fact that Deputy Cote caused the arrest warrant to issue, but testified during his deposition that he did not fully observe the events leading up to Mrs. Fialdini's arrest. However, both Deputy Cote and Deputy Sanford were present in the same room at the time of the events leading to Mrs. Fialdini's arrest, and both testified

that Mrs. Fialdini was approaching Deputy Sanford after having received explicit orders to stay back. On the facts presented in the record, we find no error in the district court's determination that, even viewing the facts in the light most favorably to Mrs. Fialdini, there was probable cause to effect her arrest. Accordingly, we conclude that Deputies Cote and Sanford are entitled to qualified immunity.

V.

Finally, we hold that Mrs. Fialdini's Fourth Amendment claim based on the ordering of a strip search while she was detained at the Loudoun County jail also fails. We agree with the district court that this claim fails because Mrs. Fialdini has not produced sufficient evidence to survive summary judgment.

Mrs. Fialdini submits that defendants Cote and Kennedy violated the Fourth Amendment when they ordered defendant Jane Doe to strip search her. The sole support for Mrs. Fialdini's unlawful strip search claim is Mr. Fialdini's statement that he overheard Deputy Cote order Deputy Kennedy, to "take care of" Mrs. Fialdini, and that Mr. Fialdini interpreted this order to mean that a strip search and body cavity check were to be performed. J.A. 339. Neither Deputy Cote nor Deputy Kennedy admitted to ordering a strip search of Mrs. Fialdini. Indeed,

23

Appellants stated in their depositions that they never heard anyone explicitly order a strip search.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of" the nonmoving party's case.  Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).  On the facts in the record, Mrs. Fialdini has not produced evidence sufficient to survive summary judgment with respect to their illegal strip search claim.  We thus affirm the district court's grant of summary judgment.

## VI.

For the reasons set forth above, the judgment of the district court is

AFFIRMED.

24