AGEE, Circuit Judge,
concurring in part and dissenting in part:
The majority holds that the arrest warrant was not supported by probable cause and that Officer Munday is not entitled to qualified immunity. I disagree. The record evidence reflects that reasonable minds could disagree as to whether probable cause exists, and therefore Munday is entitled to qualified immunity. For that reason, I respectfully dissent from the majority’s decision to reverse the district court’s judgment in favor of Munday, but concur in affirming the district court as to the remaining claims.
I.
A.
Under the Fourth Amendment to the U.S. Constitution, “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” Federal Rule of Criminal Procedure 4(a) provides that a warrant will issue if “the complaint establishes] probable cause to believe that an offense has been committed and that the defendant committed it.” An arrest satisfies the Fourth Amendment if it is supported by probable cause, “even if the wrong person is arrested.” Mensh v. Dyer, 956 F.2d 36, 39 (4th Cir. 1991).
Probable cause is determined in view of the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). “Probable cause sufficient to justify an arrest requires facts and circumstances within the officer’s knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.” United States v. *258 Humphries, 372 F.3d 653, 657 (4th Cir. 2004)[1]; see also Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (discussing the probable-cause standard).
A probable-cause inquiry “does not involve the application of a precise legal formula or test but the commonsense and streetwise assessment of the factual circumstances.” Humphries, 372 F.3d at 657; see also Florida v. Harris, — U.S.-, 133 S.Ct. 1050, 1055-56, 185 L.Ed.2d 61 (2013) (“We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach.”); Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (“These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act”). The determination of probable cause turns on probability. See Pringle, 540 U.S. at 371, 124 S.Ct. 795 (“The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.”); Gates, 462 U.S. at 232, 103 S.Ct. 2317 (“[PJrobable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.”); United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (“The process does not deal with hard certainties, but with probabilities.”); Brinegar, 338 U.S. at 175, 69 S.Ct. 1302 (“In dealing with probable cause, however, as the very name implies, we deal with probabilities.”); see also Humphries, 372 F.3d at 660 (rejecting the district court’s assertion that “probable cause means more likely than not, more than 50/50”). This is a “practical and common-sensical standard.” Harris, 133 S.Ct. at 1055.
An appellate court’s “after-the-fact scrutiny ... of the sufficiency of an affidavit should not take the form of de novo review,” and “[a] magistrate’s determination of probable cause should be paid great deference by reviewing courts.” Gates, 462 U.S. at 236, 103 S.Ct. 2317. “It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause.” 2 Wayne R. LaFave, Search & Seizure § 3.2(d) (5th ed. 2016).
Despite the majority’s attempt to distinguish Durham v. Horner, 690 F.3d 183 (4th Cir. 2012), from this case, our opinion in Durham is particularly analogous. In Durham, a confidential informant purchased drugs in Virginia from a person he identified as Michael Dwayne Durham, “an ‘old man’ who drove a Jeep with a stolen Tennessee license plate, number unknown.” Id. at 185. Officer Horner conducted a search using computer databases for “Michael Dwayne Durham” and settled on a forty-five-year-old man living in Mississippi who had previously lived in Tennessee and Virginia, owned a Jaguar, and had been arrested for driving while intoxicated. Id. at 185-86. A search of the man’s criminal history revealed convictions for possession of drug paraphernalia in Mississippi. Id. at 186. A grand jury indicted Durham, and he was arrested six months later in Tennessee. Id. at 186-87. Durham sat in jail for three months before the prosecuting attorney realized “the wrong person had been indicted and arrested.” Id. at 187.
*259 After the district court granted summary judgment to Horner based on qualified immunity, Durham appealed, contending that “Horner was not entitled to qualified immunity because he relied on and utilized unverified information to set forth a chain of events that would lead to the indictment and arrest of the wrong individual.” Id. at 188. Specifically, Durham argued that the officer knew from the computer search
that Durham had not had a [Virginia] address since 1999; that Horner never obtained the Tennessee license number to confirm whether the Jeep belonged to Durham; that Horner had not secured a photograph of Durham to show the Cl and confirm the drug dealer’s identity; that Horner believed the dealer was approximately sixty years old, and not, like Durham, in his mid-forties; and that Horner admitted by deposition that he was not a hundred percent certain that he had the correct Michael Durham.

Id.

Although we held that the grand jury indictment was sufficient to warrant a finding of qualified immunity, we also specifically found, irrespective of the indictment, that
there was ample evidence for a reasonable law enforcement officer to believe that Durham was involved in the three drug transactions — namely, the Cl had on three occasions identified the drug dealer as Michael Dwayne Durham; Durham had a [Virginia] address; the drug dealer had a vehicle with Tennessee license plates; Durham had a Tennessee driver’s license; and Durham’s criminal history included two drug-related convictions.
Id. at 190.
Similar to Durham, the evidence here reasonably supports a finding that probable cause was also “ample” when viewed in the totality of the circumstances: the informant identified the seller as a “skinny” African-American female named “April Smith”; Smith resided in Lincoln County, North Carolina,[2] and approximately eleven miles from where the drug transaction took place; she is an African-American female; Smith has been convicted of multiple felony drug offenses, including the sale of drugs; Smith weighed approximately 166 pounds nine months after the drug sale when she was arrested, which could be considered “skinny”; and her arrest records reflect weight fluctuations between 125 and 213 pounds. In fact, the evidence of probable cause is stronger in this case because there was no contradictory evidence [3] as in Durham where the plaintiff *260 had no connection to a Jeep, did not reside in Virginia at the time of the drug purchases, and was significantly younger than the informant’s age description. Despite this stronger evidence, the majority in hindsight arrives at the conclusion that probable cause was lacking.[4] Viewed properly under the totality of the circumstances, that conclusion is erroneous.
B.
An official is not entitled to qualified immunity if he or she “(1) violates a constitutional right and (2) that right was clearly established.” Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016). “If the right was not ‘clearly established’ in the specific context of the case — that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted — then the law affords immunity from suit.” Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir. 2002). It follows that “[t]he right at issue here is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest under the particular circumstances of th[is] case.” Graham, 831 F.3d at 182. If the Court finds that a clearly established constitutional right has been violated, it will then “determine whether a reasonable person in the officer’s position would have known that his or her actions violated that right.” Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996). A government official does not lose qualified immunity merely by making a mistake. Rather, the mistake must be unreasonable. See Messerschmidt v. Mil- *261 lender, 565 U.S. 535, 553-55, 132 S.Ct. 1235, 1249, 182 L.Ed.2d 47 (2012). Qualified immunity “protects law enforcement officers from bad guesses in gray areas and ensures that they are hable only for transgressing bright fines.” Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc).
In a Fourth Amendment seizure case, “the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner.” Messerschmidt, 132 S.Ct. at 1245. The magistrate’s decision will be insufficient to show objective reasonableness only when “it is obvious that no reasonably competent officer would have concluded that a warrant should issue,” such as “where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Id. The Supreme Court has recognized that “the threshold for establishing this exception is a high one.” Id. “The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions.” Id. at 1250.
An officer is not required to “exhaust every potential avenue of investigation before seeking and obtaining a warrant.” United States v. McNeal, 818 F.3d 141, 151 (4th Cir. 2016); Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000) (“That [the investigator’s] efforts could have been more thorough, or even that his actions may have been mistaken, does not mean that they were unreasonable.”); see also Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991) (“It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.”).
As discussed above, Munday knew the first and last name, race, gender, and physical description of the person who sold drugs to the confidential informant. Mun-day also knew that Smith was a local resident of the county in which the drug purchase took place, resided within eleven miles of the location of the drug purchase, and had been convicted on multiple felony drug charges. Armed with this information, under the totality of the circumstances, Munday obtained a warrant from a neutral magistrate. It is one thing to say that the amount of evidence in this case is a close call on probable cause upon which reasonable triers of fact could differ. It is another entirely to say, as the majority does, that probable cause was so lacking that Munday could not rely on a neutral magistrate’s probable cause determination.
While the majority finds probable cause totally lacking, it has cited to no case with circumstances similar to this one in which the Court found a complete dearth of probable cause. Thus, it is baffling how the majority can now find that Munday had “fair warning that his alleged conduct was unconstitutional.” Miller v. Prince George’s Cty., Md., 475 F.3d 621, 631 (4th Cir. 2007). Munday’s “judgment that the scope of the warrant was supported by probable cause may have been mistaken, but it was not plainly incompetent.” Messerschmidt, 132 S.Ct. at 1249. Nor did the magistrate in this case “so obviously err[ ] that any reasonable officer would have recognized the error.” Id. at 1250. The majority opinion leaves no room for the “reasonable error” inherent in the qualified immunity analysis — particularly where, as here, the officer obtained a warrant from a neutral magistrate — and is not consonant with our qualified immunity jurisprudence, which does not support this *262 type of de novo hindsight. Its overzealous use of retroactive perfection chills the effective operation of law enforcement officers, “impair[ing] their ability to protect the public,” Torchinsky, 942 F.2d at 259, and causing “overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability,” Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994).[5]
If nothing else, Munday could have reasonably relied on our decision in Durham, for the reasons stated in the previous section. The majority goes to great lengths to distinguish Durham from the current case. If it takes a federal court of appeals, albeit by a split panel, to distinguish Durham, then it is apparent that Munday was not put on notice by any “clearly established” law that his actions were unreasonable. Assuming, as the majority holds, that probable cause was indeed lacking, this case plainly presents one of those “gray areas” that we spoke of in Wilson. Munday is therefore entitled to qualified immunity.
For the foregoing reasons, I respectfully dissent from the majority’s reversal of the district court’s probable cause and qualified immunity rulings as to Officer Mun-day. I otherwise concur in the majority opinion.

. I have omitted internal quotation marks, alterations, and citations here and throughout this partial dissent, unless otherwise noted.

. According to the 2010 census, Lincoln County is a county of approximately 78,265 people, increasing the probability that Smith was the April Smith that sold the drugs to the confidential informant and thereby adding support to the finding of probable cause. See QuickFacts: Lincoln County, North Carolina, U.S. Census Bureau, https://www.census.gov/ quickfacts/table/POP010210/37109 (last visited Jan. 30, 2017) (saved as ECF opinion attachment); see also United States v. Gregory, 871 F.2d 1239, 1245 (4th Cir. 1989) (taking judicial notice of census data).

. The majority errs in its claim of contradictory evidence of other April Smiths. There are two sets of "search results” in the record. See Suppl. J.A. 40-42 (first set); Suppl. J.A. 97-99 (second set). A search conducted on February 4, 2010, yielded the first set of results. A November 9, 2011, search returned the second set of results. Both of these searches occurred after the December 22, 2009, arrest date, and therefore the majority cannot use either to contradict the evidence supporting the magistrate’s finding of probable cause.
The majority opinion cites to pages 40-41 of the Supplemental Joint Appendix (the first set of results) for its proposition that Munday discovered multiple African-American women named April Smith weighing between ISO-MO pounds prior to obtaining the arrest warrant. Within the same citation, the majority *260 also cites to the oral argument, in which Munday’s attorney stated:
In addition to identifying Ms. Smith, Officer Munday also ran a criminal history, and, as the Court has pointed out, and only ran a criminal history, but as the Court has pointed out, identified three April Smiths in Lincoln County, and April Smith, the plaintiff, has a very significant criminal history of doing this exact same thing — possessing and selling cocaine — dating back to the late 90s and throughout the 2000s.
Oral Argument at 18:37, Smith v. Munday, No. 15-1092 (4th Cir. Sept. 20, 2016).
The first set of results, on which the majority relies, lists five different women named April Smith from unknown areas and originated from the National Crime Information Center. In turn, the second set of results lists three women, two from Lincoln County and one from adjacent Catawba County, and originated from the Lincoln County Sheriff's Office. Compare Suppl. J.A. 40-42, with Suppl. J.A. 97-99. Because Munday’s attorney spoke of search results consisting of three women in Lincoln County, he was probably referencing either the second set of search results or search results not in the record, not the search results to which the majority cites.
It is also apparent that Munday settled on Smith as the suspect before conducting the first search because he searched for her full name, "April Yvette Smith,” along with her birth date. Suppl. J.A. 40. Therefore, those search results clearly were not used to identify Smith as the suspect. Furthermore, the second set of results does not support the majority’s reasoning either because the two women returned by the search other than Smith were Caucasian. They were conclusively ruled out as suspects because of their race, leaving only Smith. Thus, even if the dates of the searches are disregarded in assessing whether probable cause existed, the majority mischaracterizes the evidence to erroneously support a finding of contradictory evidence.

. There is nothing in the record that indicates that Smith protested her arrest as a case of mistaken identity at any time between her arrest and release. Smith’s affidavit, the only evidence supporting her response to the defendants' motion for summary judgment, maintains only that she did not sell any drugs on the date of the controlled purchase, did not know the informant, and had employment during that period. Her affidavit does not deny that she was present at the controlled purchase location on the date and time of the sale, and she has presented no alibi. The record does not reflect the basis upon which the prosecution dismissed the charges against Smith, and, consequently, no conclusions can be drawn from that occurrence that are relevant to probable cause.

. The majority s conclusion is based on the evidence as it is presented at this stage of the proceedings. I note that Munday and any other affected defendants are certainly entitled to renew their arguments regarding probable cause and qualified immunity based on the evidence adduced on the merits at trial.