**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 15-1092**

———————————

APRIL SMITH,

Plaintiff - Appellant,

v.

JASON MUNDAY; CHARLES MCGINLEY; BRIAN GREENE; RODNEY JORDAN;
CITY OF LINCOLNTON; LINCOLNTON POLICE DEPARTMENT; JOHN DOE;
JANE DOE,

Defendants – Appellees,

and

RUFUS LYNCH; MARK LESASSIER,

Defendants.

———————————

**No. 15-1496**

———————————

APRIL SMITH,

Plaintiff - Appellant,

v.

JASON MUNDAY; CHARLES MCGINLEY; BRIAN GREENE; RODNEY JORDAN;
CITY OF LINCOLNTON; LINCOLNTON POLICE DEPARTMENT; MARK
LESASSIER; JOHN DOE; JANE DOE,

Defendants – Appellees,

and

RUFUS LYNCH,

Defendant.

Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:12-cv-00202-RLV-DSC)

Argued: September 20, 2016        Decided: February 3, 2017

Before GREGORY, Chief Judge, and KING and AGEE, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge King joined. Judge Agee wrote an opinion concurring in part and dissenting in part.

**ARGUED**: Algernon Williams, Sr., LAW OFFICE OF ALGERNON WILLIAMS, Charlotte, North Carolina, for Appellant. Patrick Houghton Flanagan, CRANFILL SUMNER & HARTZOG LLP, Charlotte, North Carolina; Joseph Finarelli, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF**: Matthew K. Lilly, CRANFILL SUMNER & HARTZOG LLP, Charlotte, North Carolina; Roy Cooper, North Carolina Attorney General, Donna Elizabeth Tanner, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

GREGORY, Chief Judge:

Plaintiff-appellant April Yvette Smith brought a suit under 42 U.S.C. § 1983 alleging violations of her constitutional rights when she was arrested and held in police custody for eighty days. She named as defendants the investigating officers, Defendants Jason Munday and Charles McGinley; the arresting officers, Defendants Brian Greene and Mark Lesassier; the Chief of Police, Defendant Rodney Jordan; the City of Lincolnton; and the Lincolnton Police Department.[1] She raised Fourth Amendment and tort claims in both direct and supervisory contexts, all of which center around the allegation that she was arrested without probable cause.

The district court found that the officers had probable cause to believe that Smith illegally possessed and sold crack cocaine. Thus, no officers violated her constitutional rights or caused her injury, and neither their supervisor nor employer failed to prevent such injuries. The district court accordingly granted summary judgment in favor of all of the defendants. We reverse and remand for further proceedings.

---

[1] Smith also named the confidential informant, Rufus Lynch, as a defendant, but voluntarily dismissed him. J.A. 4-5.

I.

When reviewing a grant of summary judgment, we "view all reasonable inferences drawn from the evidence in the light that is most favorable to the non-moving party." Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008).

On March 10, 2009, officers Munday and McGinley conducted an undercover investigation using a confidential informant, Rufus Lynch Sr. J.A. 84, 105. The officers searched Lynch, wired him with audio and video recorders, and gave him sixty dollars. J.A. 84-85. Lynch then went to 728 East Pine Street, where he purchased crack cocaine from two individuals. J.A. 85. After the transaction, Lynch returned to the officers. Id. He told the officers that he purchased drugs from April Smith, a black female. Id. The detective's notes identify April Smith as such: "B/F April Smith," and "April B/F skinny $20 1 rock in plastic, Smith 40s." Supp. J.A. 17.

Because the audio recorder had no batteries, it failed to record the transaction. Supp. J.A. 17. And because the camera wired to Lynch pointed in the wrong direction, the video recording did not capture the drug sale. J.A. 85. The video instead shows an unidentified black woman sitting on a front porch, and two other individuals standing on the porch. J.A. 79. It also recorded a discussion of prices. Id.

4

At some point during the next nine months, Munday scanned police databases for residents of Lincoln County named April Smith with criminal records. He then stumbled upon April Yvette Smith, a black woman who lived in Lincoln County and had been convicted of selling crack cocaine in 1993, 1997, and 2005. His search also revealed at least two other April Smiths with criminal records. Supp. J.A. 40-41. He had no indication that the woman who sold crack cocaine to Lynch in March 2009 had a criminal record, or was even a Lincoln County resident. And the record reflects no further attempt by Munday to investigate Smith or connect her to the crime.

Nevertheless, nine months after the sale, on December 20, 2009, Munday applied for and received an arrest warrant for Smith, on charges of possession with intent to sell crack cocaine and selling or distributing cocaine. Supp. J.A. 77. And on December 22, 2009, Defendants Greene and Lesassier served the arrest warrant and arrested Smith in her home, which was eleven miles away from the site of the drug sale. See Supp. J.A. 86. Smith was held in custody for approximately eighty days, facing the threat of prosecution. Over the course of her incarceration, Smith allegedly lost her job. J.A. 43. The Lincoln County District Attorney's Office then requested that the charges be dismissed.

5

Smith filed suit, alleging constitutional violations of the Fourth and Fourteenth Amendments,[2] and state-law claims for intentional or negligent infliction of emotional distress, negligence, negligent supervision, gross negligence, assault, battery, false imprisonment, and false arrest.

The district court found that no constitutional violation occurred. The district court reasoned that the investigating officers were looking for a black woman named April Smith who sold drugs, and they found a black woman named April Smith who had sold drugs in the past, and who was arrested only eleven miles away from where the drug sale occurred. The one factor the district court believed counseled against probable cause was Smith's weight. The seller was a skinny woman; conversely, Smith was 160 pounds upon arrest, and alleged that she weighed more than 200 pounds in March 2009, when the sale occurred. But the officers were unaware of Smith's weight at the time of the transaction, and the district court reasoned that 160 pounds was not so different from "skinny," especially with an intervening nine months, so as to discredit a finding of probable cause. Thus, even if she ultimately might not have been the correct individual, the district court found that--at the time, with the

---

[2] Smith also raised Fifth Amendment claims. But her Fifth Amendment claims were identical to her Fourth Amendment claims, and otherwise not discussed.

6

information then known--the investigating officers had probable cause to believe that Smith was the woman who sold Lynch crack cocaine.

But even ignoring Smith's weight, a criminal history, common race, common gender, and unfortunately common name is not enough to establish probable cause. For this reason, we reverse the district court and remand for further proceedings.

## II.

We review a district court's grant of summary judgment de novo. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817 (4th Cir. 1995). Summary judgment should be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

### A.

The district court properly stylized Smith's false arrest claims against the investigating officers as malicious prosecution claims. J.A. 107. A claim of malicious prosecution

7

under § 1983 is a claim "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). This Fourth Amendment claim requires "that [1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." Massey v. Ojanit, 759 F.3d 343, 356 (4th Cir. 2014) (quoting Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)).

Here, the sole question at issue is whether there was probable cause to arrest Smith. Probable cause is determined by a "totality-of-the circumstances" approach. Illinois v. Gates, 462 U.S. 213, 230 (1983). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id.

The probable-cause inquiry turns on two factors: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)). A court should only consider the information the officers had at the time they sought

8

the warrant.  Id.  Yet the probable-cause inquiry "examine[s] the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause."  Id. at 185 (quoting Gray, 137 F.3d at 769).

When applying for an arrest warrant, Munday simply did not have enough information for any reasonable or prudent person to believe there was probable cause.  He lacked any information connecting Smith's conduct to the contours of the offense, and certainly lacked enough evidence to create any inference more than mere suspicion.

Of the offense, Munday knew only that Lynch, a confidential informant used by members of the police department before but new to him, said "April Smith," a skinny, black woman, sold him crack cocaine.  He did not know if she had been convicted for selling crack cocaine before or if she lived in the county.

But to find the offender, Munday merely ran a broad search in the department's database of individuals with criminal histories, looking for a woman of the same name.  And when he found multiple individuals, at least two of whom were black women named April Smith weighing between 130 and 140 pounds, he chose one for no immediately apparent reason.  Oral Argument at 18:40,

Smith v. Munday, -- F. 3d -- (4th Cir. Sept. 20, 2016) (No. 15-1092), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments (recording Munday's lawyer admitting that Munday searched a criminal history database to find the offender and found three April Smiths with criminal histories residing in Lincoln County); see also Supp. J.A. 40-41 (listing excerpts of case report, including criminal database results revealing at least two black women named April Smith weighing between 130-140 pounds, filed as exhibits to Munday's sworn affidavit). There is no evidence that Munday attempted to identify Smith as the black woman in the video footage. There is no evidence that the officers showed Lynch a photo of Smith to establish the identification. There is no evidence that the officers investigated Smith herself, or found any indication that Smith frequented the site of the drug sale that day, that month, or at all. Indeed, there is no explanation whatsoever for the nine-month delay between Lynch saying a black woman named April Smith sold crack cocaine to him and the issuance of an arrest warrant for April Yvette Smith.

In short, Munday had no evidence about Smith's conduct, let alone whether she was a participant in, connected to, or even physically present near the drug sale in question. His only information about Smith was that she had previously been convicted for selling drugs years past, that she was a black

10

woman, and that she was "near" the site of the drug sale because her home address was eleven miles away. If this amount of evidence were sufficient for probable cause, then officers would have probable cause to obtain arrest warrants for any local residents who fit the generic description of the day--be it "black woman," "black man," or otherwise--so long as they had a criminal history and an unfortunately common name. Such scant evidence barely meets the threshold of "mere suspicion," let alone the threshold of probable cause.

An investigating officer need not "exhaust[ ] every potential avenue of investigation." Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000). But an investigating officer must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime.

In Thompson v. Prince William County, 753 F.2d 363 (4th Cir. 1985), this Court found that probable cause supported an arrest warrant for Lisa Ann Thompson, even though--as it turned out--she was the wrong person. There, an undercover police agent saw Thompson driving through a parking lot and recorded her license plate number. Id. He then purchased marijuana from a woman who identified herself as "Lisa," id. at 364, and he believed that she was the same woman he had seen driving earlier. After the sale, he ran the car's license-plate number through a motor-vehicle database and found that the owner of the car was Lisa Ann

11

Thompson. Id. A police informant, who worked as a bouncer at a nearby restaurant, also told the officer that the woman driving the car was named Lisa. Id. The officer obtained an arrest warrant for Lisa Ann Thompson, and she was arrested. Id. at 365. Ultimately, the officer was mistaken; Thompson was not the woman he purchased drugs from. Yet this Court found that the officer had probable cause to obtain an arrest warrant at the time because he took reasonably prudent steps to determine that he was arresting the correct person.

In Thompson, the police officer used multiple methods to establish the arrestee's identity, and he himself (mistakenly) identified her as the woman he purchased drugs from. Though in error, he connected the woman he arrested to the crime by his own identification of her as a co-participant in the transaction. The equivalent mistake here would be if Munday showed Lynch a photo of Smith, and Lynch mistakenly believed that Smith was the woman he purchased crack cocaine from. But here, Munday made no attempt to connect Smith to the crime. And he had no evidence whatsoever connecting Smith to the crime. Thus, Munday had no probable cause to seek an arrest warrant.

And in Durham v. Horner, 690 F.3d 183 (4th Cir. 2012), this Court affirmed the district court's granting of summary judgment based on qualified immunity because there was probable cause for an ultimately erroneous arrest. There, a confidential informant

12

purchased drugs in Big Stone Gap, Virginia, from an "old man," identified thrice as Michael Dwayne Durham, who drove a Jeep with a stolen Tennessee license plate.  Id. at 185.  The investigating officer, Horner, used a Social Security Number he received from the Task Force for that name, as well as two internet investigative resources, Accurint and VCIN, to identify the offender.  Horner found a forty-five-year-old man named Michael Dwayne Durham with Tennessee DMV records, a purchased Jaguar, and addresses in Virginia (including Big Stone Gap) and Tennessee. Id. at 185-86.  Durham also had state convictions for possession of drug paraphernalia.  Id. at 186.  After conducting the investigation, Horner took no role in further proceedings.  Id. A grand jury subsequently returned three indictments against Durham for felony drug distribution.  Durham was arrested and later released because he was the wrong person.  Id. at 187.

By law, "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause."  Id. at 189 (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)).  In Horner, a proper indictment by a grand jury conclusively proved that there was probable cause.  Conversely, here, Munday sought no indictment by grand jury.  As a result, Durham's "primary problem," that a grand jury found probable cause, is inapposite to Smith's case. Id.  And since the record did not reveal any way in which Horner

13

participated in the indictment proceeding, the grand jury's determinations, not Horner, were the proximate cause of the arrest; conversely, Munday drafted and submitted the application for an arrest warrant.

And even if the court looked beyond the dispositive nature of the indictments, Horner had a first, middle, and last name; Munday had only a common first name and a common last name. There is no evidence that Horner or the Task Force found multiple individuals by that name; Munday's counsel admits that even an area as small as Lincoln County had three April Smiths with criminal histories. Horner found an individual whose prior residence and DMV record matched the state of the seller's stolen car; Munday had no such identifying information connecting Smith to the crime, other than a common name, gender, race, and generic description as "skinny." "Horner was 'not required to exhaust every potentially exculpatory lead or resolve every doubt'" to show probable cause. Id. at 190 (quoting Miller v. Prince George's County, 475 F.3d 621, 630 (4th Cir. 2007)). But he still had to conduct some level of investigation. And he did. Munday conducted none.

A magistrate judge's approval of the arrest warrant does not alter this conclusion. We generally accord great deference to a magistrate judge's determination of probable cause, but that deference is not "boundless." United States v. Leon, 468 U.S.

14

897, 914 (1984) (quoting Spinelli v. United States, 393 U.S. 410, 417 (1969)). "[C]ourts must also insist that the magistrate purport to 'perform his neutral and detached function and not serve merely as a rubber stamp for the police.'" Id. (quoting Aguilar v. Texas, 378 U.S. 108, 111 (1964)). Here, the evidence placing Smith at the crime is so scant--indeed, it is non-existent--that deferring to the magistrate judge would be inappropriate. Munday's application for an arrest warrant lacked probable cause and thus violated Smith's Fourth Amendment rights.

B.

Having found that no probable cause existed for the warrant, the next question is whether Munday is entitled to qualified immunity. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'" Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (quoting Leon, 468 U.S. at 922-23). But there is an exception to this general rule. Qualified immunity does not apply "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 344-45 (1986).

15

A warrant is so deficient in indicia of probable cause when it has an "error that is apparent from a 'simple glance' at the face of the warrant itself, not a defect that would 'become apparent only upon a close parsing of the warrant application.'" Armstrong v. Asselin, 734 F.3d 984, 992 (9th Cir. 2013) (quoting Messerschmidt, 132 S. Ct. at 1250). And here, even a glance shows that Munday was unreasonable if he believed he had probable cause. Smith did have a criminal history for possessing and selling cocaine. But as discussed above, Munday had no evidence about her conduct whatsoever, let alone any evidence connecting her to the crime in question. It would be unreasonable for any officer to view Munday's dearth of evidence as sufficient to establish probable cause. As a result, qualified immunity does not apply.

When the Supreme Court established this reasonableness standard, it articulated why the law should hold officers accountable for unreasonable warrant applications:

> True, an officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause. But such reflection is desirable, because it reduces the likelihood that the officer's request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty.

16

_Malley_, 475 U.S. at 343-44. Those very same reasons are equally applicable here. The warrant issued in this case was wholly unreasonable. And the premature, or simply insufficient, request for a warrant in this case resulted in Smith's eighty-day incarceration under threat of prosecution and alleged loss of her job. Had Munday more carefully reflected on his warrant application, perhaps these injuries could have been avoided.

C.

For these reasons, we hold that Munday violated Smith's Fourth Amendment rights when he applied for an arrest warrant that wholly lacked probable cause. The district court had previously found that Smith's state-law claims against all of the individual officers, and negligent-supervision and pattern-or-practice theories of liability against the Chief of Police and City of Lincolnton failed because no constitutional violation occurred. J.A. 111-14. Because this reversal implicates those rulings, we remand to the district court so it can examine its prior determinations in the first instance.

Smith also brought claims against the Lincolnton Police Department. But a governmental entity may only be sued if the law of the state in which the court is located permits it. Fed. R. Civ. P. 17(b)(3). Under North Carolina law, police departments cannot be sued as entities. _See_ _Ostwalt v._ _Charlotte-Mecklenburg Bd. of Educ._, 614 F. Supp. 2d 603, 607

17

(W.D.N.C. 2008); Wright v. Town of Zebulon, 688 S.E.2d 786, 789 (N.C. Ct. App. 2010). Therefore, we affirm the district court's dismissal of claims against the Lincolnton Police Department.

III.

Smith also brought a claim for false arrest against her arresting officers, Greene and Lesassier. A claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause. See Brooks v. City of Winston-Salem, 85 F.3d 178, 181-82 (4th Cir. 1996). Here, Greene and Lesassier merely executed the arrest as they were required to do, pursuant to a facially valid warrant, so her false arrest claim is improper.[3] As a result, we affirm the district court on this claim.

---

[3] Even if Smith had raised a malicious prosecution claim, her claim would still likely have failed. Although the arrest warrant lacked probable cause, the arresting officers were unaware of the scant factual basis supporting the facially valid warrant. Looking at the information they knew at the time, the officers acted reasonably when relying on the warrant. See Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) (officers who arrested Plaintiff pursuant to facially valid warrant receive qualified immunity from malicious prosecution claim because a reasonable person would not have known he was violating a clearly established right).

18

IV.

For the foregoing reasons, the district court's decision is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

AGEE, Circuit Judge, concurring in part and dissenting in part:

The majority holds that the arrest warrant was not supported by probable cause and that Officer Munday is not entitled to qualified immunity. I disagree. The record evidence reflects that reasonable minds could disagree as to whether probable cause exists, and therefore Munday is entitled to qualified immunity. For that reason, I respectfully dissent from the majority's decision to reverse the district court's judgment in favor of Munday, but concur in affirming the district court as to the remaining claims.

I.

A.

Under the Fourth Amendment to the U.S. Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Federal Rule of Criminal Procedure 4(a) provides that a warrant will issue if "the complaint establish[es] probable cause to believe that an offense has been committed and that the defendant committed it." An arrest satisfies the Fourth Amendment if it is supported by probable cause, "even if the wrong person is arrested." Mensh v. Dyer, 956 F.2d 36, 39 (4th Cir. 1991).

20

Probable cause is determined in view of the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 230-31 (1983). "Probable cause sufficient to justify an arrest requires facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004)[1]; see also Maryland v. Pringle, 540 U.S. 366, 371 (2003) (discussing the probable-cause standard).

A probable-cause inquiry "does not involve the application of a precise legal formula or test but the commonsense and streetwise assessment of the factual circumstances." Humphries, 372 F.3d at 657; see also Florida v. Harris, 133 S. Ct. 1050, 1055-56 (2013) ("We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach."); Brinegar v. United States, 338 U.S. 160, 175 (1949) ("These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."). The determination of probable cause turns on probability. See

---

[1] I have omitted internal quotation marks, alterations, and citations here and throughout this partial dissent, unless otherwise noted.

21

*Pringle*, 540 U.S. at 371 ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."); *Gates*, 462 U.S. at 232 ("[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules."); *United States v. Cortez*, 449 U.S. 411, 418 (1981) ("The process does not deal with hard certainties, but with probabilities."); *Brinegar*, 338 U.S. at 175 ("In dealing with probable cause, however, as the very name implies, we deal with probabilities."); *see also Humphries*, 372 F.3d at 660 (rejecting the district court's assertion that "probable cause means more likely than not, more than 50/50"). This is a "practical and common-sensical standard." *Harris*, 133 S. Ct. at 1055.

An appellate court's "after-the-fact scrutiny . . . of the sufficiency of an affidavit should not take the form of *de novo* review," and "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. "It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause." 2 Wayne R. LaFave, *Search & Seizure* § 3.2(d) (5th ed. 2016).

22

Despite the majority's attempt to distinguish Durham v. Horner, 690 F.3d 183 (4th Cir. 2012), from this case, our opinion in Durham is particularly analogous. In Durham, a confidential informant purchased drugs in Virginia from a person he identified as Michael Dwayne Durham, "an 'old man' who drove a Jeep with a stolen Tennessee license plate, number unknown." Id. at 185. Officer Horner conducted a search using computer databases for "Michael Dwayne Durham" and settled on a forty-five-year-old man living in Mississippi who had previously lived in Tennessee and Virginia, owned a Jaguar, and had been arrested for driving while intoxicated. Id. at 185-86. A search of the man's criminal history revealed convictions for possession of drug paraphernalia in Mississippi. Id. at 186. A grand jury indicted Durham, and he was arrested six months later in Tennessee. Id. at 186-87. Durham sat in jail for three months before the prosecuting attorney realized "the wrong person had been indicted and arrested." Id. at 187.

After the district court granted summary judgment to Horner based on qualified immunity, Durham appealed, contending that "Horner was not entitled to qualified immunity because he relied on and utilized unverified information to set forth a chain of events that would lead to the indictment and arrest of the wrong individual." Id. at 188. Specifically, Durham argued that the officer knew from the computer search

23

that Durham had not had a [Virginia] address since 1999; that Horner never obtained the Tennessee license number to confirm whether the Jeep belonged to Durham; that Horner had not secured a photograph of Durham to show the CI and confirm the drug dealer's identity; that Horner believed the dealer was approximately sixty years old, and not, like Durham, in his mid-forties; and that Horner admitted by deposition that he was not a hundred percent certain that he had the correct Michael Durham.

Id.

Although we held that the grand jury indictment was sufficient to warrant a finding of qualified immunity, we also specifically found, irrespective of the indictment, that

there was ample evidence for a reasonable law enforcement officer to believe that Durham was involved in the three drug transactions -- namely, the CI had on three occasions identified the drug dealer as Michael Dwayne Durham; Durham had a [Virginia] address; the drug dealer had a vehicle with Tennessee license plates; Durham had a Tennessee driver's license; and Durham's criminal history included two drug-related convictions.

Id. at 190.

Similar to Durham, the evidence here reasonably supports a finding that probable cause was also "ample" when viewed in the totality of the circumstances: the informant identified the seller as a "skinny" African-American female named "April Smith"; Smith resided in Lincoln County, North Carolina,[2] and

---

[2] According to the 2010 census, Lincoln County is a county of approximately 78,265 people, increasing the probability that Smith was the April Smith that sold the drugs to the confidential informant and thereby adding support to the finding

(Continued)

24

approximately eleven miles from where the drug transaction took place; she is an African-American female; Smith has been convicted of multiple felony drug offenses, including the sale of drugs; Smith weighed approximately 166 pounds nine months after the drug sale when she was arrested, which could be considered "skinny"; and her arrest records reflect weight fluctuations between 125 and 213 pounds. In fact, the evidence of probable cause is stronger in this case because there was no contradictory evidence[3] as in Durham where the plaintiff had no

---

of probable cause. See QuickFacts: Lincoln County, North Carolina, U.S. Census Bureau, https://www.census.gov/quickfacts/table/POP010210/37109 (last visited Jan. 30, 2017) (saved as ECF opinion attachment); see also United States v. Gregory, 871 F.2d 1239, 1245 (4th Cir. 1989) (taking judicial notice of census data).

[3] The majority errs in its claim of contradictory evidence of other April Smiths. There are two sets of "search results" in the record. See Suppl. J.A. 40-42 (first set); Suppl. J.A. 97-99 (second set). A search conducted on February 4, 2010, yielded the first set of results. A November 9, 2011, search returned the second set of results. Both of these searches occurred after the December 22, 2009, arrest date, and therefore the majority cannot use either to contradict the evidence supporting the magistrate's finding of probable cause.

The majority opinion cites to pages 40-41 of the Supplemental Joint Appendix (the first set of results) for its proposition that Munday discovered multiple African-American women named April Smith weighing between 130-140 pounds prior to obtaining the arrest warrant. Within the same citation, the majority also cites to the oral argument, in which Munday's attorney stated:

In addition to identifying Ms. Smith, Officer Munday also ran a criminal history, and, as the Court has pointed out, and only ran a criminal history, but as the Court has pointed out, identified three April
(Continued)

25

connection to a Jeep, did not reside in Virginia at the time of the drug purchases, and was significantly younger than the informant's age description. Despite this stronger evidence, the majority in hindsight arrives at the conclusion that

---

Smiths in Lincoln County, and April Smith, the plaintiff, has a very significant criminal history of doing this exact same thing -- possessing and selling cocaine -- dating back to the late 90s and throughout the 2000s.

Oral Argument at 18:37, Smith v. Munday, No. 15-1092 (4th Cir. Sept. 20, 2016).

The first set of results, on which the majority relies, lists five different women named April Smith from unknown areas and originated from the National Crime Information Center. In turn, the second set of results lists three women, two from Lincoln County and one from adjacent Catawba County, and originated from the Lincoln County Sheriff's Office. Compare Suppl. J.A. 40-42, with Suppl. J.A. 97-99. Because Munday's attorney spoke of search results consisting of three women in Lincoln County, he was probably referencing either the second set of search results or search results not in the record, not the search results to which the majority cites.

It is also apparent that Munday settled on Smith as the suspect before conducting the first search because he searched for her full name, "April Yvette Smith," along with her birth date. Suppl. J.A. 40. Therefore, those search results clearly were not used to identify Smith as the suspect. Furthermore, the second set of results does not support the majority's reasoning either because the two women returned by the search other than Smith were Caucasian. They were conclusively ruled out as suspects because of their race, leaving only Smith. Thus, even if the dates of the searches are disregarded in assessing whether probable cause existed, the majority mischaracterizes the evidence to erroneously support a finding of contradictory evidence.

26

probable cause was lacking.[4]  Viewed properly under the totality of the circumstances, that conclusion is erroneous.

B.

An official is not entitled to qualified immunity if he or she "(1) violates a constitutional right and (2) that right was clearly established."  Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016).  "If the right was not 'clearly established' in the specific context of the case -- that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted -- then the law affords immunity from suit."  Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir. 2002).  It follows that "[t]he right at issue here is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest under the particular circumstances of th[is] case."  Graham, 831 F.3d at 182.  If the Court finds that a clearly established

_____

[4] There is nothing in the record that indicates that Smith protested her arrest as a case of mistaken identity at any time between her arrest and release.  Smith's affidavit, the only evidence supporting her response to the defendants' motion for summary judgment, maintains only that she did not sell any drugs on the date of the controlled purchase, did not know the informant, and had employment during that period.  Her affidavit does not deny that she was present at the controlled purchase location on the date and time of the sale, and she has presented no alibi.  The record does not reflect the basis upon which the prosecution dismissed the charges against Smith, and, consequently, no conclusions can be drawn from that occurrence that are relevant to probable cause.

constitutional right has been violated, it will then "determine whether a reasonable person in the officer's position would have known that his or her actions violated that right." Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996). A government official does not lose qualified immunity merely by making a mistake. Rather, the mistake must be unreasonable. See Messerschmidt v. Millender, 565 U.S. 535, ___, 132 S. Ct. 1235, 1249 (2012). Qualified immunity "protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc).

In a Fourth Amendment seizure case, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Messerschmidt, 132 S. Ct. at 1245. The magistrate's decision will be insufficient to show objective reasonableness only when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," such as "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. The Supreme Court has recognized that "the threshold for establishing this exception is a high one." Id. "The occasions on which this standard will be met may be rare, but so too are the circumstances in which it

28

will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." Id. at 1250.

An officer is not required to "exhaust every potential avenue of investigation before seeking and obtaining a warrant." United States v. McNeal, 818 F.3d 141, 151 (4th Cir. 2016); Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000) ("That [the investigator's] efforts could have been more thorough, or even that his actions may have been mistaken, does not mean that they were unreasonable."); see also Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.").

As discussed above, Munday knew the first and last name, race, gender, and physical description of the person who sold drugs to the confidential informant. Munday also knew that Smith was a local resident of the county in which the drug purchase took place, resided within eleven miles of the location of the drug purchase, and had been convicted on multiple felony drug charges. Armed with this information, under the totality of the circumstances, Munday obtained a warrant from a neutral magistrate. It is one thing to say that the amount of evidence

29

in this case is a close call on probable cause upon which reasonable triers of fact could differ. It is another entirely to say, as the majority does, that probable cause was so lacking that Munday could not rely on a neutral magistrate's probable cause determination.

While the majority finds probable cause totally lacking, it has cited to no case with circumstances similar to this one in which the Court found a complete dearth of probable cause. Thus, it is baffling how the majority can now find that Munday had "fair warning that his alleged conduct was unconstitutional." Miller v. Prince George's Cty., Md., 475 F.3d 621, 631 (4th Cir. 2007). Munday's "judgment that the scope of the warrant was supported by probable cause may have been mistaken, but it was not plainly incompetent." Messerschmidt, 132 S. Ct. at 1249. Nor did the magistrate in this case "so obviously err[] that any reasonable officer would have recognized the error." Id. at 1250. The majority opinion leaves no room for the "reasonable error" inherent in the qualified immunity analysis -- particularly where, as here, the officer obtained a warrant from a neutral magistrate -- and is not consonant with our qualified immunity jurisprudence, which does not support this type of de novo hindsight. Its overzealous use of retroactive perfection chills the effective operation of law enforcement officers, "impair[ing] their

30

ability to protect the public," Torchinsky, 942 F.2d at 259, and causing "overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability," Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994).[5]

If nothing else, Munday could have reasonably relied on our decision in Durham, for the reasons stated in the previous section. The majority goes to great lengths to distinguish Durham from the current case. If it takes a federal court of appeals, albeit by a split panel, to distinguish Durham, then it is apparent that Munday was not put on notice by any "clearly established" law that his actions were unreasonable. Assuming, as the majority holds, that probable cause was indeed lacking, this case plainly presents one of those "gray areas" that we spoke of in Wilson. Munday is therefore entitled to qualified immunity.

For the foregoing reasons, I respectfully dissent from the majority's reversal of the district court's probable cause and qualified immunity rulings as to Officer Munday. I otherwise concur in the majority opinion.

---

[5] The majority's conclusion is based on the evidence as it is presented at this stage of the proceedings. I note that Munday and any other affected defendants are certainly entitled to renew their arguments regarding probable cause and qualified immunity based on the evidence adduced on the merits at trial.